## No. 2122.

### MARY J. O'NEIL v. THE WILLS POINT BANK.

1. PRACTICE — CHARGE OF COURT.—A defendant claimed damages for the wrongful sueing out an attachment and also sought a recovery on the ground that the levy was excessive: *Held,* that if the pleadings and evidence would have authorized a recovery on account of an excessive levy, it was the duty of defendant to ask a charge directing the attention of the jury specifically to that matter, if this was not done in the charge given by the court.

2. MEASURE OF DAMAGES.— The purposes to which a safe and hack were applied prior to an attachment being levied upon them, were held immaterial in a claim by the defendant in attachment for damages based on the alleged malice of plaintiff in suing out the writ. Exceptions were properly sustained to an answer which sought damages, based on the deprivation of the use of the property, instead of being based on its value.

3. PLEADING—DAMAGES.—An averment in the pleadings of the defendant in attachment that the property attached was largely in excess of the claim of the plaintiff, would not authorize evidence to show the liability of plaintiff for an excessive levy.

4. EVIDENCE.—Where an attachment is based on the ground that defendant was about to remove his property, or a part of it, out of the county for the purpose of defrauding his creditors, and the defendant claims exemplary damages for suing out the writ, the declarations of third parties made to the plaintiff, which from their nature would naturally have influenced his action in procuring an attachment and having reference to the honesty of defendant's intentions, are sometimes admissible, to show that the writ was not sought to oppress, but was applied for in good faith.

5. ASSIGNMENTS OF ERROR.—The oft repeated caution that assignments of error can not be considered unless prepared as required by Revised Statutes Article 1037, and rules of the Supreme Court Nos. 23, 24, again given in this case.

APPEAL from Van Zandt. Tried below before the Hon. Felix J. McCord.

Suit brought by Wills Point Bank against John A. O'Neal, September 21, 1882, for debt of six hundred and eighty-two dollars and fifty cents; attachments were sued out against defendant and levied on his property. The defendant answered, admitting the debt sued for, and pleaded in offset and reconvention, actual damages, two thousand six hundred and fifty-two dollars and

sixty cents, value of property levied on and converted by plaintiffs, besides two hundred dollars deterioration in value of green hides levied on, and ten dollars per month for use of safe and one dollar per day for use of hack levied on from date of levy; also, claimed exemplary damages in the sum of ten thousand five hundred dollars, because said attachment was maliciously sued out; and because the levy was excessive, and because his credit, standing and reputation as a butcher and stock dealer were ruined and destroyed.  After the institution of this suit, John A. O'Neal died and Mary J. O'Neal, his wife, made herself, as administratrix of his estate, party defendant, after which the district judge sustained exceptions to that part of defendant's original answer claiming exemplary damages and actual damages for use of hack and safe, and defendant excepted, amended the original answer and asked judgment against plaintiffs in the sum of two thousand and seventy-two dollars and fifty-five cents as the difference between the amount of plaintiff's debt—six hundred and eighty-two dollars and fifty cents—and the value of defendant's property attached—two thousand eight hundred and seventy-seven dollars and sixty cents.  There was trial by jury, verdict and judgment for plaintiff for eight hundred and seventy dollars and thirty cents with foreclosure of attachment lien.

The plaintiff on the trial asked witness J. W. Fuller, one of plaintiffs, about a conversation that he had with O'Neal in regard to what O'Neal did with the six hundred and eighty-two dollars and fifty cents borrowed from the bank, and what the money was gotten for and just before the attachment was sued out, to which defendant objected, because the purposes for which the money was gotten and what O'Neal did with it were made immaterial by the admission of plaintiff's debt, and by plaintiff basing its attachment on O'Neal moving his property out of the county with intent to defraud his creditors, which objection the court overruled and witness stated that the money was loaned to O'Neal to buy cattle, and that O'Neal told him, in said conversation, that he had bought cattle with the money, which cattle were then in Hunt county and would be brought over in a few days.  That he, witness, afterwards learned from Jeff Bridges, who was in the employment of O'Neal buying cattle, that O'Neal had no cattle in Hunt county, to all of which the defendant excepted, and moved the court to strike out what witness said about learning from Jeff Bridges that O'Neal had no cattle in

Hunt county, because it was hearsay, and because it was not shown whether Bridges knew it or not, and the court overruled the motion to strike out, and defendant excepted.

The plaintiff asked witness J. M. Lybrand what the bank advanced to O'Neal the six hundred and eighty-two dollars and fifty cents for, to which defendant objected because the plaintiff's debt being admitted, the object of O'Neal in obtaining the money, or the purpose for which the bank let him have it, was immaterial, and because the purpose for which it was advanced was not made the ground for attachment, and could not justify the attachment or excuse an excessive levy, and the court overruled the objection, and witness stated that the bank advanced O'Neal the money to buy beef cattle with, which he was to ship to market; the bill of lading was to be returned to plaintiffs and they were to draw for the amount advanced and attach draft to bill of lading, and O'Neal did not buy and ship the cattle, to all of which defendant excepted.

*Kearby & McChesney*, for appellant.

*Kilgore, Lively & Kilgore*, for appellee.

STAYTON, ASSOCIATE JUSTICE.    The attachment in this case was based on an affidavit which alleged that the defendant was about to remove his property, or a part of it, out of the county in which the action was brought, with intent to defraud his creditors.

The defendant died, and the cause is defended by his representative, who, in reconvention, seeks to recover damages actual and exemplary.

Whether the attachment was wrongfully sued out was fairly submitted to the jury, and their finding, in effect, that it was not, is not wanting in evidence to sustain it.

It is claimed in the brief of counsel that the levy was excessive, and that on this ground damages should have been allowed to the defendant.

An inspection of the pleadings does not show any such averments of fact as would have entitled the defendant to recover from the plaintiff damages on this ground, and there was no charge given or requested upon that subject.

The answer alleges that property of value largely in excess of the sum sued for was attached; but there are no such averments

in the answer as would be necessary to show a liability on the part of the plaintiffs for an excessive levy.

If, however, the pleadings and proof had been sufficient to justify a recovery upon this ground, a charge should have been asked upon that subject, when the charge given did not direct the jury in this respect.

The peculiar purposes to which the safe and hack levied upon were applied by the defendant, prior to the levy, could not have made the measure of damages for an unlawful seizure such as was asserted in the answer, and there was no error in the ruling of the court in sustaining an exception to so much of the answer as sought damages based on the deprivation of such use and not upon the value of the property.

Any evidence tending to show that the defendant was removing his property from the county, and that at the time he was clouding the title to a part of the property so to be removed, was admissible, especially in a case in which exemplary damages were asked, to show fraudulent intent.

What it was proper to prove it was proper to allege, and the court correctly overruled exceptions to so much of the supplemental petition as set up the matters referred to in the brief of counsel for appellant under the second assignment of error.

The evidence of the witnesses Fuller and Lybrand was admissible under the issues made in the case, if for no other purpose, to show from the dealings of the defendant with them, that they had ground to believe that the purpose of the defendant in removing his property from the county was to defraud them. The evidence had but a remote bearing even upon that matter, but it was not irrelevant.

The declaration of Bridges, proved by Fuller, would not ordinarily be admissible, but when the question whether an act was done in good faith becomes an issue in the case, the declarations of other persons made to the actor, which influenced, or may have influenced his action, or which tended to illustrate the intent of his adversary, where intent becomes important, are often admissible.

What has been said in reference to the plaintiff's pleadings under the second assignment of error, disposes of the sixth assignment, which relates to the admission of evidence to sustain the pleading to which we have held that the court properly overruled a special exception.

What the defendant did on the next day after the attachment

was levied towards removing the property from the county, which he evidently intended to remove at the time the levy on a part of the property was made, and had then made preparation to remove, had but a remote bearing on the issues involved, but we can not say that it was irrelevant; for it tended to show the fixed purpose of the defendant to remove property from the county, which had been hindered or delayed by the seizure of some of the horses intended to be removed and to be used in the removal of other property.

The eleventh assignment of error is that: "The court erred in overruling defendant's motion for new trial, as shown by bill of exceptions No. 11."

Bill of exceptions "No. 11" is no more specific than is the assignment.

An inspection of the motion for new trial shows that it was asked on eight separate grounds.

It ought to be understood, after the repeated rulings made upon this question, that such an assignment of error will not be considered.

The statute and rules of this court plainly point out how assignments of error must be made (Rev. Stat., art. 1037; Rules of the Supreme Court, Nos. 23–26,) and a failure to observe them will be, as the statute and rules declare shall be, regarded as a waiver, unless the error be such as the court would act upon without any assignment.

We find no such error, and the judgment will be affirmed.

*Affirmed.*

Opinion delivered November 26, 1886.